**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO.** 4:19-CV-102-JHM

**In re: 751 Boone Drive, Madisonville, Kentucky 42431**

UNITED STATES OF AMERICA                                              PLAINTIFF

VS.

UNKNOWN HEIRS OF BETTYE HERALD (A/K/A BETTYE G. HERALD)
**Serve via Appointment of**
**Warning Order Attorney:**          **751 Boone Drive**
                                      **Madisonville, Kentucky 42431**          DEFENDANTS

<u>*IN REM* **COMPLAINT**</u>

******** 

Comes now the Plaintiff, the United States of America, by and through counsel, and for its *in rem* Complaint and cause of action against the Defendants states as follows:

1. This real estate foreclosure action is brought by the United States of America, on behalf of its Department of Agriculture, Rural Housing Service ("RHS") a/k/a Rural Development ("RD") f/k/a Farmers Home Administration ("FmHA"), pursuant to Title 28, United States Code, § 1345.

2. On or about December 5, 1997, Bettye Herald and Iley M. Herald (hereinafter collectively referred to as "the Heralds"), for value received, executed and delivered to RHS a promissory note (hereinafter "Note") in the principal amount of $50,980.00, bearing interest at the rate of 7.250 percent per annum, the Note calling for monthly payments of principal and interest.  A copy of the Note is attached hereto marked **Exhibit A**, and is hereby incorporated by reference as if set forth at length herein.

3. Contemporaneously with the execution of the Note, the Heralds executed,

acknowledged, and delivered to RHS a real estate mortgage (hereinafter the "First Mortgage"), which was recorded on December 8, 1997, in Mortgage Book 507, Page 494, in the Commonwealth of Kentucky, Hopkins County Clerk's Office.  In and by this First Mortgage, the Heralds granted to RHS a first mortgage lien against the therein-described real property (the "Property") located in Hopkins County, Kentucky.  A copy of the First Mortgage is attached hereto marked **Exhibit B**, and is hereby incorporated by reference as if set forth at length herein.

4. Contemporaneously with the execution of the Note and First Mortgage, the Heralds executed, acknowledged, and delivered to RHS a Subsidy Repayment Agreement, which is attached hereto marked **Exhibit C**, and hereby incorporated by reference as if set forth at length herein.

5. On December 21, 2007, Bettye Herald (a/k/a Bettye G. Herald) executed, acknowledged, and delivered to RHS a real estate mortgage (hereinafter the "Second Mortgage"), which was recorded December 21, 2007, in Mortgage Book 917, Page 183, in the Hopkins County Clerk's Office. The Second Mortgage is attached hereto marked **Exhibit D**, and is hereby incorporated by reference as if set forth at length herein.

6. By virtue of all of the foregoing, the real property which is the subject of this mortgage foreclosure action consists of a tract of land located in Hopkins County, Kentucky, and more particularly described as follows:

> Being all of Lot No. 16 of Heritage Manor, a subdivision to the city of Madisonville, Kentucky, as the same appears upon a plat or map of said subdivision of record in the Office of the Clerk of the Hopkins County Court in Plat Book 1, Page 76 to which plat or map reference is hereby made for a more particular description of the property.

All of the minerals within and underlying the above described property are excepted and reserved from this conveyance.

This conveyance is made expressly subject to the Protective Covenants affecting Heritage Manor Subdivision, of record in Deed Book 323, page 70, and amended in Deed Book 328, Page 271, in the Office of the Clerk of the Hopkins County Court; and to all easements, reservations, and restrictions.

AND BEING the same property conveyed to Bettye Herald and Iley Mae Herald, and the survivor of them, from Ray Robinson and Lisa Robinson, husband and wife, by Deed dated December 5, 1997, of record in Deed Book 564, Page 469, in the Office of the Hopkins County Clerk. Iley May Herald died intestate on August 2, 2001, and pursuant to the survivorship clause in said Deed, full fee simple title vested to Bettye Herald.  Bettye Herald died intestate on November 22, 2017.

7. The Heralds have failed and continue to fail to make payments of principal and interest due in accordance with the terms and conditions of the Note, First Mortgage, and Second Mortgage, and are therefore in default.

8. Paragraph 22 of the First Mortgage and Second Mortgage (hereinafter collectively referred to as "the Mortgages") provides that if default occurs in the performance or discharge of any obligation of the Mortgages, then the United States, acting through RHS, shall have the right to accelerate and declare the entire amount of all unpaid principal, together with all accrued and accruing interest to be immediately due and payable and to bring an action to enforce said Mortgages, including the foreclosure of the liens thereof.  Because of the Default of the Heralds, as set forth above, RHS caused a Notice of Acceleration of Indebtedness and Demand for Payment to be issued to the Heralds declaring the entire indebtedness due upon the Note, the repayment of which is secured by the Mortgages, to be immediately due and payable, which demand has been refused.

9. Paragraph 1 of the Subsidy Agreement provides that any subsidy received in

accordance with a loan under §502 of the Housing Act of 1949 is repayable to the Government upon the disposition or non-occupancy of the security property.

10. The unpaid principal balance on the Note, the repayment of which is secured by the First Mortgage, is $35,339.98, with accrued interest of $7,693.56, through August 6, 2019, a total subsidy granted of $36,939.00, late charges in the amount of $24.16, and fees assessed of $9,116.16, for a total unpaid balance due of $89,112.86, as of August 6, 2019.  Interest is accruing on the unpaid principal balance at the rate of $8.7138 per day after August 6, 2019.  An Affidavit of Proof Statement of Account signed by RD Foreclosure Representative Kimberly Williamson is attached hereto marked **Exhibit E**, and is hereby incorporated by reference as if set forth at length herein.

11. Included within the balance set out in Paragraph 10 above, the portion of the debt attributable to the First Mortgage secured by the real estate collateral is the principal sum of $35,339.98, with interest accrued thereon of $7,693.56 through August 6, 2019.  Interest is accruing on the unpaid principal balance at the rate of $8.7138 per day after August 6, 2019.

12. The unpaid principal balance due on the Second Mortgage is $2,852.06, with accrued interest of $85.55, and late charges in the amount of $1.84, for a total unpaid balance due of $2,939.45 as of August 6, 2019. Interest is accruing on the unpaid principal balance at the rate of $0.0781 per day after August 6, 2019.  An Affidavit of Proof Statement of Account signed by RD Foreclosure Representative Kimberly Williamson is attached hereto marked **Exhibit F**, and is hereby incorporated by reference as if set forth at length herein.

13. The additional unpaid principal balance due on Second Mortgage is $1,405.36, with

accrued interest of $42.19, and late charges in the amount of $1.84, for a total unpaid balance due of $1,449.39 as of August 6, 2019. Interest is accruing on the unpaid principal balance at the rate of $0.0385 per day after August 6, 2019. An Affidavit of Proof Statement of Account signed by RD Foreclosure Representative Kimberly Williams is attached hereto marked **Exhibit G**, and is hereby incorporated by reference as if set forth at length herein.

14. Iley May Herald died intestate on August 2, 2001, and pursuant to the survivorship clause in Deed Book 564, Page 469, of record in the Office of the Hopkins County Clerk, attached hereto marked **Exhibit H**, full fee simple title vested to Betty Herald (a/k/a Betty G. Herald).

15. Bettye Herald (a/k/a Bettye G. Herald) died intestate on November 22, 2017. To the best of Plaintiff's knowledge, no will or affidavit of descent has been filed of record, and, therefore, the heirs of Bettye Herald (a/k/a Bettye G. Herald) are unknown to Plaintiff. The Unknown Heirs of Bettye Herald (a/k/a Bettye G. Herald) are vested with an interest in the property pursuant to the Kentucky laws of intestacy. Said interest is junior in rank and subordinate in priority to the first and second mortgage liens on the Property in favor of RHS. RHS is entitled to a foreclosure sale of the Property free and clear of any interest therein or claim thereon in favor of Defendants, Unknown Heirs of Bettye Herald (a/k/a Bettye G. Herald), and the Plaintiff calls upon them to come forth and assert their claim or interest in the Property or be forever barred.

16. The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's liens thereon.

17. The liens on the Property in favor of RHS, by virtue of the Mortgages, are first, prior and superior to all other claims, interests and liens in and to the Property except for liens securing the payment of ad valorem property taxes.

18. There are no other individuals or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands relief as follows:

a. That RHS be awarded an *in rem* judgment against the interests of the Defendants, Unknown Heirs of Bettye Herald (a/k/a Bettye G. Herald), in and to the Property in the principal amount of $35,339.98, plus interest in the amount of $7,693.56, as of August 6, 2019, total subsidy granted in the amount of $36,939.00, late charges in the amount of $24.16, and fees assessed of $9,116.16, for a total unpaid balance due of $89,112.86, as of August 6, 2019, with interest accruing at the daily rate of $8.7138 from August 6, 2019, until the date of entry of Judgment, plus interest thereafter accruing according to law, costs, disbursements, attorney's fees, and expenses.

b. That RHS be awarded an additional judgment in the principal amount of $2,852.06, plus interest in the amount of $85.55, as of August 6, 2019, with late charges in the amount of $1.84, for a total unpaid balance due of $2,939.45, as of August 6, 2019, with interest accruing at the daily rate of $0.0781 from August 6, 2019, until the date of entry of Judgment, plus interest thereafter accruing according to law, costs, disbursements, attorney's fees, and expenses.

c. Further that RHS be awarded an additional judgment in the principal amount of

$1,405.36, plus interest in the amount of $42.19, as of August 6, 2019, with late charges in the amount of $0.0385, for a total unpaid balance due of $1,449.39, as of August 6, 2019, until the date of entry of Judgment, plus interest thereafter accruing according to law, costs, disbursements, attorney's fees, and expenses.

d.   That RHS be adjudged a liens on the Property, prior and superior to any and all other liens, claims, interests, and demands, except liens for unpaid real estate ad valorem taxes; for an *in rem* judgment and order of sale against the interest of any unknown spouse, unknown heirs, or subordinate lienholders; and for an Order of Sale of the Property in accordance with Title 28 U.S.C. §§ 2001-2003;  that the Property be sold free and clear of any and all liens and claims for any and all parties to this action, except for real estate restrictions and easements of record, and liens for any city, state, county, or school ad valorem taxes which may be due and payable at the time of sale; and free and clear of any right of equity of redemption; and that the proceeds from the sale be applied first to the costs of this action, second to the debt, interest, costs and fees due to the Plaintiff, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.   That the Property be adjudged indivisible and be sold as a whole;

f.   That the Defendants be required to answer and set up their respective liens, claims, or interests in and to the Property, if any, or be forever barred, and that the foreclosure sale of the Property be free and clear of all such liens, claims and interests;

g.   For any and all other lawful relief to which Plaintiff may appear properly entitled.

Respectfully Submitted,


By: /s/ Lauren B. Durham
Attorney for the Plaintiff:
James S. Watson/ Lauren B. Durham
Foreman Watson Holtrey, LLP
530 Frederica Street
Owensboro, Kentucky 42301
Phone: (270)689-2424
Fax: (270)689-2420


**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

# CIVIL COVER SHEET

℘JS 44   (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

UNITED STATES OF AMERICA

### DEFENDANTS

Unknown Heirs of Bettye Herald (a/k/a Bettye G. Herald)

**(b)**   County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant      Hopkins
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Foreman Watson Holtrey, LLP
530 Frederica St., Owensboro, KY 42301 (270)689-2424

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                           and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from another district (specify)
☐ 6   Multidistrict Litigation
☐ 7   Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1345

Brief description of cause:
Rural Housing Service Federal Foreclosure

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
93,501.70

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):         JUDGE                            DOCKET NUMBER

DATE
08/19/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Lauren B. Durham

FOR OFFICE USE ONLY

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.    Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.  Example:   U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

~3

## PROMISSORY NOTE

Type of Loan SECTION 502

Date: __December 05__ , __1997__                    Loan No. ▓▓▓▓▓▓

__751 Boone Drive__
(Property Address)

__Madisonville__ , __Hopkins__ , __Kentucky__
(City or Town)        (County)        (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ _50,980.00_ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __7.250__ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

[ ] I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[x] II. Payments shall not be deferred. I agree to pay principal and interest in __396__ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the __5th__ day of each month beginning on __January 05__ , __1998__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __December 05__ , __2030__ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ _339.24_ . I will make my monthly payment at __the post office__ __address noted on my billing statement__ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provision

1

**EXHIBIT**

**A**

...TE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account # 0▮▮▮▮▮▮▮

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

---

x*Bettye Herald* _____ Seal
P.O.A   Borrower

x*Riley M. Herald* _____ Seal
Borrower

_____ Seal
Borrower

_____ Seal
Borrower

---

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL $ | | |

Account #: ▮▮▮▮▮▮▮

BOOK *507* PAGE *594*

Form RD 3550-14 KY
(11-96)

Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on **December 5, 1997** , . [Date]
The mortgagor is **Bettye Herald and Iley Mae Herald**

("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 12/5/1997 | $50,980.00 | 12/5/2030 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of
**Hopkins**
, State of Kentucky

**SEE ATTACHMENT**

which has the address of   **751 Boone Drive** ,   **Madisonville**
              **42431**      [Street]       ("Property Address");           [City]
Kentucky       [ZIP]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., SW, Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6

RECORDING FEES *$20.00*


EXHIBIT
B
tabbies'

*495*

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.



Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security



Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

  19.  **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

  20.  **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

  Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

  As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

  21.  **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

  **NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:**

  22.  **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

  23.  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

  24.  Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

  25.  **Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

  26.  **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

*499*

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of · this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

*Bettye Herald* [SEAL]
P.O.A _____
                    *Borrower*
*Iley Mae Herald* [SEAL]
                    *Borrower*

STATE OF KENTUCKY
COUNTY OF _Hopkins_ } ss :        **ACKNOWLEDGMENT**

Before me, _Kim Burden_ _____, a Notary Public in and for the County of _Hopkins_ _____, personally appeared _Bettye Herald and Iley M. Herald_ _____ who acknowledged that _they_ executed the foregoing instrument on the _5_ day of _December_, 1997 as _their_ free act and deed.

WITNESS my hand and official seal this _5_ day of _December_, 1997.

[SEAL]                         _Kim Burden_ _____ Notary Public

My commission expires _5/23/2000_

**PREPARER'S STATEMENT**
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

_Pam Corbin_ _____        _____
_(Name)_                        _(Signature)_

_16 Court St., Madisonville Ky 42431_
_(Address)_

**RECORDER'S CERTIFICATE**
STATE OF KENTUCKY
COUNTY OF _Hopkins_ } ss :

I, _Dewra Steebler_ _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _8th_ day of _Dec_ - , 1997 , lodged for record _____ at _6:16_ o'clock _P_ M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _8th_ day of _Dec_ , 1997 .

_Dewra Steebler_ _____
Clerk of [    ]County Court
By _Sylvia Hamilton_, D.C.

Page 6 of 6

 *500*   LEGAL DESCRIPTION TO THE MORTGAGE

Being all of Lot No. 16 of Heritage Manor, a subdivision to the city of Madisonville, Kentucky, as the same appears upon a plat or map of said subdivision of record in the Office of the Clerk of the Hopkins County Court in Plat Book 1, page 76 to which plat or map reference is hereby made for a more particular description of the property.

All of the minerals within and underlying the above described property are excepted and reserved from this conveyance.

This conveyance is made expressly subject to the Protective Covenants affecting Heritage Manor Subdivision, of record in Deed Book 323, page 70, in the Office of the Clerk of the Hopkins County Court; and to all easements, reservations, and restrictions.

Being the same property conveyed to Bettye Herald and Iley Mae Herald by a deed of conveyance from Ray Robinson and his wife, Lisa Robinson dated December 5, 1997 and of record in Deed Book 565, page 589 in the office of the Hopkins County Court Clerk.

STATE OF KENTUCKY
COUNTY OF HOPKINS > SC

This instrument was filed for record on the
8th day of Dec., 1997
at 2:76 P m, and is duly recorded in
this book 507
page 490
DEVRA A. STECKLER, CLERK
Sylvia Hamilton D.C.

Form RHS 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

## SUBSIDY REPAYMENT AGREEMENT

Account #: 0016706944

1.   As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.   When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.   Market value at time of initial subsidy $ _50,500.00_ less amount of Rural Housing Service (RHS) loans $50,980.00 less amount of any prior liens $ _____ equals my/our original equity $480.00- . This amount equals _-1.0_ % of the market value as determined by dividing original equity by the market value.

4.   If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.   Calculating Recapture

Market value (at the time of transfer or abandonment)
LESS:
    Prior liens,
    RHS balance,
    Reasonable closing costs,
    Principal reduction at note rate,
    Original equity (see paragraph 3), and
    Capital improvements.
EQUALS
    Appreciation Value. (If this is a positive value, continue.)
TIMES
    Percentage in paragraph 4 (if applicable),
    Percentage in paragraph 5, and
    Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
    Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower Bettye Herald   Bettye Herald | Date 12/05/97 |
|---|---|
| Borrower P.O.A.  Sley Mae Herald   Sley Mae Herald | Date 12/05/97 |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Submit your completed form to your local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

EXHIBIT
C

BOOK 912 PAGE 183

Form RD 3550-14 KY
(Rev. 12-05)

(Space Above This Line For Recording Data)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on 21st day of December, 2007    [Date]
The mortgagor is  Bettye G. Herald, a single person,                                ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United
States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States
Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note")
which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and
payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| December 21, 2007 | $3,410.00 | January 5, 2028 |

This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to
42 U.S.C. §§ 1472(g) or 1490a.  For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described
property located in the County of Hopkins

, State of Kentucky

See attached Exhibit "A"

which has the address of 751 Boone Drive                              Madisonville
                                    [Street]                         [City]
Kentucky    42431   [Zip]   ("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a
valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete
this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching
existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Page 1 of 6

RECORDING FEES: $27.00



*188*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_Bettye G. Herald_ [SEAL]
Bettye G. Herald   *Borrower*

_____ [SEAL]
*Borrower*

STATE OF KENTUCKY                    }
                                     } ss:          **ACKNOWLEDGMENT**
COUNTY OF __HOPKINS__                }

Before me, _Michael D. Ballyburton_ , a Notary Public in and for the County of __Hopkins__ , personally appeared __Bettye G. Herald__ who acknowledged that __she__ executed the foregoing instrument on the __21st__ day of __December__ , __2007__ as __her__ free act and deed.

WITNESS my hand and official seal this __21st__ day of __December__ , __2007__ .

[SEAL]                                              _____ Notary Public

                                                   My commission expires

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

__Michael D. Ballyburton__                          _____
          *(Name)*                                     *(Signature)*
__54 South Main Street, Madisonville, Kentucky 42431__, Telephone No. __(270) 825-2815__
          *(Address)*

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY                    }
                                     } ss:
COUNTY OF __HOPKINS__                }

I, _Dena Stokke_ , Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the __21__ day of __December__ , __2007__ , lodged for record _____ at _____ o'clock __M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this __21__ day of __December__ , __2007__ .

                              _Dena Stokke_
                              Clerk of __Hopkins__ *County Court*

                              By _____ , D.C.

Page 6 of 6

EXHIBIT "A"

*189*

Being all of Lot No. 16 of Heritage Manor, a subdivision to the city of Madisonville, Kentucky, as the same appears upon a plat or map of said subdivision of record in the Office of the Clerk of the Hopkins County Court in Cabinet 1, Slide 38 (formerly Plat Book 1, page 76) to which plat or map reference is hereby made for a more particular description of the property.

All of the minerals within and underlying the above described property are excepted and reserved from this conveyance.

This conveyance is made expressly subject to the Protective Covenants affecting Heritage Manor Subdivision, of record in Deed Book 323, page 70, in the Office of the Clerk of the Hopkins County Court; and to all easements, reservations, and restrictions.

Being the same property conveyed to Bettye Herald and Iley Mae Herald by a deed of conveyance from Ray Robinson and his wife, Lisa Robinson, dated December 5, 1997, and of record in Deed Book 564, Page 469, in the Office of the Hopkins County Court Clerk.

STATE OF KENTUCKY
COUNTY OF HOPKINS } SC
This instrument was filed for record on the
____ day of ____, 20__
at ____ m, and is duly recorded in
____ book ____
page ____
DEVRA A. STECKLER, CLERK
____ D.C.

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL DEVELOPMENT**

**AFFIDAVIT OF PROOF STATEMENT OF ACCOUNT AS TO:**

Borrower's Name(s):          **Bettye Herald and Iley Mae Herald**
RD Loan Number(s):           ~~████████~~

**STATE OF MISSOURI**
**COUNTY OF ST LOUIS**

Personally appeared before me the undersigned authority, **Kimberly Williamson**, Foreclosure Representative, Rural Development (RD) who upon oath deposes and says that she is an employee of the United States Department of Agriculture, an agency of the United States of America, and further states as follows:

1. That affiant is the RD Officer charged with legal custody of the accelerated RD loan file.

2. That affiant has personally reviewed **Bettye Herald and Iley Mae Herald**, borrowers Rural Development's accelerated RD loan account and file, and according to the records maintained and kept in this office, the borrower(s) as of **August 6, 2019**, owe(s) the unpaid balance of **$89,112.86** which includes principal, interest accrued to date and other charges to the account as provided by the loan instruments and applicable law.  Interest continues to accrue at the rate of **$8.7138** per day as provided by the loan instruments. The payment is due the **5th** of every month and is currently delinquent for **September 5, 2016 thru August 6, 2019.**

3. The account is delinquent as of **August 6, 2019** in the amount of **$22,818.32.**

Breakdown of the unpaid balance:

| | |
|---|---|
| Loan Number | ~~████████~~ |
| Principal Balance | $ 35,339.98 |
| Interest | $  7,693.56 |
| Total Subsidy Granted | $ 36,939.00 |
| Escrow | $ |
| Late Charges | $     24.16 |
| Fees Assessed | $  9,116.16 |
| Escrow Credits | $ |
| **TOTAL** | **$ 89,112.86** |

Affiant has personal knowledge of the above-stated facts, is competent to testify to same, and declares that the foregoing is true and correct.

*Kimberly Williamson*

Kimberly Williamson, Foreclosure Representative
St. Louis, MO
Rural Development
United States Department of Agriculture

Sworn to and subscribed before me this 6th day of August, 2019

*Kari C. Meyer*

**Kari C. Meyer**, Notary
Notary Public for Missouri
My Commission Expires: 02/24/2022

KARI C. MEYER
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 14398578
My Commission Expires Feb 24, 2022



**EXHIBIT**
E

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL DEVELOPMENT**

**AFFIDAVIT OF PROOF STATEMENT OF ACCOUNT AS TO:**

Borrower's Name(s):          **Bettye Herald and Iley Mae Herald**
RD Loan Number(s):           ███████

**STATE OF MISSOURI
COUNTY OF ST LOUIS**

Personally appeared before me the undersigned authority, **Kimberly Williamson**, Foreclosure Representative, Rural Development (RD) who upon oath deposes and says that she is an employee of the United States Department of Agriculture, an agency of the United States of America, and further states as follows:

1.   That affiant is the RD Officer charged with legal custody of the accelerated RD loan file.

2.   That affiant has personally reviewed **Bettye Herald and Iley Mae Herald**, borrowers Rural Development's accelerated RD loan account and file, and according to the records maintained and kept in this office, the borrower(s) as of **August 6, 2019**, owe(s) the unpaid balance of **$2,939.45** which includes principal, interest accrued to date and other charges to the account as provided by the loan instruments and applicable law.  Interest continues to accrue at the rate of **$0.0781** per day as provided by the loan instruments. The payment is due the **5th** of every month and is currently delinquent for **September 5, 2016** thru **August 6, 2019.**

3.   The account is delinquent as of **August 6, 2019** in the amount of **$829.48.**

Breakdown of the unpaid balance:

| | |
|---|---|
| Loan Number | ███████ |
| Principal Balance | $ 2,852.06 |
| Interest | $    85.55 |
| Total Subsidy Granted | $ |
| Escrow | $ |
| Late Charges | $    1.84 |
| Fees Assessed | $ |
| Escrow Credits | $ |
| **TOTAL** | **$ 2,939.45** |

Affiant has personal knowledge of the above-stated facts, is competent to testify to same, and declares that the foregoing is true and correct.

*Kimberly Williamson*
Kimberly Williamson, Foreclosure Representative
St. Louis, MO
Rural Development
United States Department of Agriculture

Sworn to and subscribed before me this 6th day of August, 2019

*Kari C. Meyer*
**Kari C. Meyer**, Notary
Notary Public for Missouri
My Commission Expires: 02/24/2022

KARI C. MEYER
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 14398578
My Commission Expires Feb 24, 2022



**EXHIBIT**

F

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL DEVELOPMENT**

**AFFIDAVIT OF PROOF STATEMENT OF ACCOUNT AS TO:**

Borrower's Name(s):          **Bettye Herald and Iley Mae Herald**
RD Loan Number(s):          ▓▓▓▓▓▓▓

**STATE OF MISSOURI**
**COUNTY OF ST LOUIS**

Personally appeared before me the undersigned authority, **Kimberly Williamson**, Foreclosure Representative, Rural Development (RD) who upon oath deposes and says that she is an employee of the United States Department of Agriculture, an agency of the United States of America, and further states as follows:

1.  That affiant is the RD Officer charged with legal custody of the accelerated RD loan file.

2.  That affiant has personally reviewed **Bettye Herald and Iley Mae Herald**, borrowers Rural Development's accelerated RD loan account and file, and according to the records maintained and kept in this office, the borrower(s) as of **August 6, 2019**, owe(s) the unpaid balance of **$1,449.39** which includes principal, interest accrued to date and other charges to the account as provided by the loan instruments and applicable law.  Interest continues to accrue at the rate of **$0.0385** per day as provided by the loan instruments. The payment is due the **5th** of every month and is currently delinquent for **September 5, 2016** thru **August 6, 2019.**

3.  The account is delinquent as of **August 6, 2019** in the amount of **$415.84.**

Breakdown of the unpaid balance:

| Loan Number | ▓▓▓▓▓▓▓ |
|---|---|
| Principal Balance | $ 1,405.36 |
| Interest | $     42.19 |
| Total Subsidy Granted | $ |
| Escrow | $ |
| Late Charges | $       1.84 |
| Fees Assessed | $ |
| Escrow Credits | $ |
| **TOTAL** | **$ 1,449.39** |

Affiant has personal knowledge of the above-stated facts, is competent to testify to same, and declares that the foregoing is true and correct.

*Kimberly Williamson*

Kimberly Williamson, Foreclosure Representative
St. Louis, MO
Rural Development
United States Department of Agriculture

Sworn to and subscribed before me this 6th day of August, 2019

*Kari C. Meyer*

**Kari C. Meyer**, Notary
Notary Public for Missouri
My Commission Expires: 02/24/2022

KARI C. MEYER
Notary Public - Notary Seal
St Louis County - State of Missouri
Commission Number 14398578
My Commission Expires Feb 24, 2022



**EXHIBIT**
**G**



P. m. Corbin
DEC 11 1997
DELIVERED

BOOK 565 PAGE 569

THIS DEED OF CONVEYANCE made and entered into this 5 day of December, 1997 by and between RAY ROBINSON and his wife, LISA ROBINSON, by and through her Power of Attorney, Ray Robinson (See Deed Book 68, page 58) 309 Spring Lake Woods, Madisonville, hereinafter referred to as the Grantors, and BETTYE HERALD, and ILEY MAE HERALD, 751 Boone Drive, Madisonville, Kentucky 42431, hereinafter referred to as the Grantees;

WITNESSETH: That for and in consideration of the sum of FORTY SEVEN THOUSAND AND 00/100 ($47,000.00) DOLLARS, cash in hand paid the receipt of which is hereby acknowledged, the Grantors do hereby grant, bargain, sell and convey unto the Grantees, or survivor of them, their heirs and assigns forever the following described real estate:

Being all of Lot No. 16 of Heritage Manor, a subdivision to the city of Madisonville, Kentucky, as the same appears upon a plat or map of said subdivision of record in the Office of the Clerk of the Hopkins County Court in Plat Book 1, page 76 to which plat or map reference is hereby made for a more particular description of the property.

All of the minerals within and underlying the above described property are excepted and reserved from this conveyance.

This conveyance is made expressly subject to the Protective Covenants affecting Heritage Manor Subdivision, of record in Deed Book 323, page 70, in the Office of the Clerk of the Hopkins County Court; and to all easements, reservations, and restrictions.

Being the same property conveyed to Ray Robinson by a deed from the Master Commissioner dated July 1, 1992 of record in Deed Book 509, page 579, office of the Hopkins County Court Clerk.

TO HAVE AND TO HOLD the above described real estate, together with all appurtenances thereunto belonging, unto the Grantees, or survivor of them, their heirs and assigns forever, with Covenant of General Warranty of Title.

The parties hereto state that the consideration stated above is the full consideration paid for the property. The Grantees join this deed for the sole purpose of certifying that the consideration is the full consideration paid.

IN WITNESS WHEREOF the Grantors and the Grantees have hereunto set their hands on this 5 day of December, 1997.

RECORDING FEE $12.00
TRANSFER TAX $47.00



EXHIBIT
H

1

_490_

GRANTORS:

_____
Ray Robinson

_____
Lisa Robinson, by and through her
Power of Attorney, Ray Robinson

GRANTEES:

_Bettye Herald_____
Bettye Herald

_P.O.B. Iley M. Herald___
Iley Mae Herald by Bettye Herald
POA for Iley Mae Herald
See Lease Book 12 pg 112.

STATE OF KENTUCKY

COUNTY OF HOPKINS

The foregoing instrument and consideration certificate was subscribed and sworn to and acknowledged before me this _5_ day of _December_, 1997 by Ray Robinson and her husband, Lisa Robinson, by and through her power of attorney Ray Robinson, to be their free act in due form of law.

_____
Notary Public
State of Kentucky at Large
My Commission Expires: _5/23/2002_

STATE OF KENTUCKY

COUNTY OF HOPKINS

The foregoing instrument and consideration certificate was subscribed and sworn to and acknowledged before me this _5_ day of _December_, 1997 by Bettye Herald and Iley Mae Herald to be their free act in due form of law.

_____
Notary Public
State of Kentucky at Large
My Commission Expires: _5/23/2002_

Prepared by:

_____
Pam Corbin
16 Court Street
Madisonville, KY 42431
(502) 821-0711

STATE OF KENTUCKY > ss
COUNTY OF HOPKINS >
This instrument was filed for record on the ___ day of _Dec_, 19_97_ at _12:76_ m, and is duly recorded in book _555_ page _587_
DEVRA A. STECKLER, CLERK
_____ D.C.

2